IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALOYSIUS THADDEUS HENRY | * |
| | * |
| Plaintiff, | * |
| | * Civil Action No. |
| vs. | * 2:05-CV-1234-MEF-VPM |
| | * |
| D. T. MARSHALL, et al., | * |
| | * |
| Defendants. | * |

## SPECIAL REPORT

COME NOW the Defendants Montgomery County Commission, D.T. Marshall, Gina M. Savage, Martinez Tolbert, Annie Pearl Findley, and Fae Davis, and submit the following Special Report to this Court.

### DOCUMENTS

Affidavit of D.T. Marshall

Affidavit of Gina M. Savage

Affidavit of Martinez Tolbert

Affidavit of Fae Davis

Affidavit of Annie Pearl Findley

MCDF Inmate Records

### PLAINTIFF'S ALLEGATIONS

Plaintiff claims that Officer Tolbert used unnecessary force when escorting him from his cell by slamming Plaintiff into a wall hurting Plaintiff's left shoulder. (Complaint, pp. 1-2) Plaintiff further claims the Defendants were deliberately indifferent by denying him proper

1

SCANNED

medical treatment for his injured shoulder. (Complaint, 1-2, 5) Plaintiff seeks compensatory and punitive damages against the Defendants. (Complaint, p. 5)

## FACTS

Plaintiff entered the Montgomery County Detention Facility ("MCDF") on December 2, 2004 charged with Burglary I. His bond was set at $30,000. (Affidavit of Gina Savage, ¶ 2) At the time of the events alleged in the Plaintiff's Complaint he was a pretrial detainee.

According to the records at the MCDF, in January of 2005, Plaintiff filed a grievance stating that he slipped and fell in the shower and hurt his spine, lower back and leg. (MCDF Inmate Records, p. 1) Plaintiff was seen by the doctor and prescribed Motrin 800 mg. (MCDF Inmate Records, p. 2, 5-6) Plaintiff also received medical treatment and x-rays in March 2005 for injured fingers. (MCDF Inmate Records, pp. 2-4, 7)

On March 29, and April 1, 2005, Plaintiff complained of joint pain and that the "whole left side of my body" was hurting. (MCDF Inmate Records, pp. 8-9) On April 6, 2005, Plaintiff also complained of ongoing pain to his shoulder. (MCDF Inmate Records, p. 10; Affidavit of Gina Savage, ¶ 3) On April 6, 2005, an x-ray was done and the results were normal. (MCDF Inmate Records, p. 10; Affidavit of Gina Savage, ¶ 3)

Subsequently, the MCDF Extraction Team conducted a cell search in 3-Isolation cellblock where Plaintiff was housed. (Affidavit of Martinez Tolbert, ¶ 3; MCDF Inmate Records, p. 16) After Plaintiff's cell was searched, the officers discovered contraband on the wall and on Plaintiff's head. (Id.) Officer Tolbert ordered Plaintiff to remove the contraband from his head and from the wall. (Id.) Plaintiff began cursing and using profanity. (Id.) Plaintiff admits that he "had words" with Officer Tolbert. (MCDF Inmate Records, p. 23) Another officer ordered Plaintiff to place his hands outside the feed trap in the door of the cell so

2

he could be handcuffed. (Affidavit of Martinez Tolbert, ¶ 3) Plaintiff was then handcuffed and escorted by the arm by Officer Tolbert out of the cell onto the hall. (Id.; MCDF Inmate Records, p. 16) Officer Tolbert did not use unnecessary force on Plaintiff while escorting him. (Id.; Affidavit of Gina Savage, ¶ 3)

Plaintiff began complaining about his shoulder because he was handcuffed from behind. (Affidavit of Martinez Tolbert, ¶ 3) Officer Tolbert and another officer then escorted Plaintiff to the medical unit where he was seen by Nurse Dees. (Id.; MCDF Inmate Records, pp.11, 16) Plaintiff did not appear to be injured nor was his mouth bleeding. (Affidavit of Martinez Tolbert, ¶ 3; MCDF Inmate Records, p. 11) The nurse's notes state "no acute distress/no deformity noted." (MCDF Inmate Records, p. 12; Affidavit of Gina Savage, ¶ 3) The nurse also told Plaintiff that she would place him on the list to see the doctor. (Affidavit of Martinez Tolbert, ¶ 3) Officer Tolbert never made any threats toward Plaintiff and never had any contact with him when he was in 4-Isolation. (Id.) There are also no reports at the MCDF indicating that Plaintiff was injured while being escorted by Officer Tolbert nor is there any medical evidence to substantiate Plaintiff's claim that his shoulder was injured while he was being escorted to another cellblock. (Affidavit of Gina Savage, ¶ 3) As a member of the MCDF Extraction Team, Officer Tolbert is trained to restrain and move hostile inmates without causing injury. (Id.)

On May 6, 2005, Plaintiff's left shoulder was x-rayed by Southern Radiology Services. (MCDF Inmate Records, p. 13; Affidavit of Gina Savage, ¶ 3) The x-ray report states "No evidence of fracture or dislocation is identified. The glenohumeral and AC joints appear unremarkable. Soft tissues appear normal. Normal radiographic appearance of the left shoulder." (MCDF Inmate Records, p. 13) On May 31, 2005, Plaintiff continued to complain of

3

pain to his shoulder and was prescribed Motrin 800 mg (twice daily) (MCDF Inmate Records, pp. 10, 28 ; Affidavit of Gina Savage, ¶ 3)

Plaintiff complained of inadequate medical treatment to the Grievance Clerk, Defendant Fae Davis. These complaints were addressed by Defendant Davis on June 1, 2005. (MCDF Inmate Records, p. 16) Defendant Davis noted that Plaintiff had been provided medical treatment, including medication and x-rays, and that Plaintiff was not being denied medical attention. (MCDF Inmate Records, p. 16)

Plaintiff was also seen by the medical staff at the MCDF complaining of a sore throat and shoulder pain on June 20, 2005. He was treated for his sore throat and his current medication for shoulder pain was continued. (MCDF Inmate Records, p. 17; Affidavit of Gina Savage, ¶ 3) On June 24, 2005, Dr. Nichols noted in Plaintiff's file that the x-rays of Plaintiff's shoulder were normal; however, Plaintiff had begun to complain of more pain over the last few weeks. (MCDF Inmate Records, p. 17) A percogesic was prescribed for two weeks, and pain medication continued (MCDF Inmate Records, pp. 17, 28) Another x-ray of the shoulder was then done by Southern Radiology Services on June 27, 2005. (MCDF Inmate Records, p. 18; Affidavit of Gina Savage, ¶ 3) The results showed: "The AC and glenohumeral joints, bones and soft tissues are normal. No fracture, dislocation, arthritis or bone lesion identified. Opinion: Normal shoulder." (MCDF Inmate Records, p. 18; Affidavit of Gina Savage, ¶ 3) Plaintiff's pain medication was continued for the month July, 2005. (MCDF Inmate Records, p. 19-22)

On August 9, 2005, Plaintiff had an appointment with an orthopedic physician and was prescribed 800 mg of Ibuprofen and percogesics for seven days. (MCDF Inmate Records, p. 25, 28) Plaintiff was seen by Alabama Orthopaedic Specialists P.A. on August 18, 2005 and sent to

Rehab Associates. (MCDF Inmate Records, p. 26) Pain medication was continued for the Plaintiff as well. (MCDF Inmate Records, p. 27)

Plaintiff was sentenced to the Department of Corrections on September 30, 2005 and released to the Department of Corrections on November 4, 2005. (Affidavit of Gina Savage, ¶ 2) Plaintiff is longer incarcerated at the MCDF. (Id.)

## DEFENSES

1. The Complaint fails to state a claim against these Defendants upon which relief can be granted.

2. Defendants did not violate any of the Plaintiff's constitutional rights afforded him under law.

3. Plaintiff's claims against the Montgomery County Commission are due to be dismissed because the Montgomery County Commission and its individual Commissioners are not responsible for the operation of the Montgomery County Detention Facility, or for the provision of medical treatment to inmates or for the custody and control of inmates.

4. Plaintiff's claims for punitive damages against the Montgomery County Commission must be dismissed because punitive damages may not be recovered against a county.

5. Defendants Marshall, Savage, Tolbert, Findley and Davis are entitled to immunity under the Eleventh Amendment to the United States Constitution with respect to Plaintiff's claims against them in their official capacities.

6. All official capacity claims against Defendants Marshall, Savage, Tolbert, Findley and Davis must be dismissed because in their official capacities, Defendants are not considered "persons" subject to liability under 42 U.S.C. § 1983.

5

7. Defendants Marshall, Savage, Tolbert, Findley and Davis are entitled to qualified immunity with respect to Plaintiff's claims against them in their individual capacities.

8. Defendants aver that they acted in a manner that was in accordance with previous court rulings regarding the operation of the Montgomery County Detention Facility.

9. Defendants aver that the prison regulations in question were reasonably related to legitimate penological interests.

10. Defendants aver that Plaintiff's claim for deliberate indifference to serious medical needs is due to be dismissed because Defendants had no knowledge of an excessive risk of serious harm to the Plaintiff.

11. Defendants aver that Plaintiff's claim for deliberate indifference to serious medical needs is due to be dismissed because Plaintiff was afforded more than adequate medical care by the Defendants and their agents.

12. Defendants aver that Plaintiff's claim for excessive force is due to be dismissed because the force applied, if any, was applied in a good faith effort to maintain and restore discipline and was necessary, reasonable in relation to the threat of discord apparent at the time and did not harm the Plaintiff.

## MEMORANDUM OF LAW

A. **Montgomery County Commission.**

To the extent the Plaintiff seeks to hold Montgomery County liable for the actions of the Sheriff of Montgomery County or any correctional officers at the MCDF responsible for supervising the Plaintiff, all such claims should be dismissed. In *Turquitt v. Jefferson County*, 137 F.3d 1285, 1291-92 (11th Cir. 1998), the estate of a pretrial detainee in a county jail who was

fatally injured in a fight with another inmate filed § 1983 claims against Jefferson County claiming inadequate supervision over inmates, overcrowding, and improper classification of inmates, all of which allegedly caused the inmate's death. *Id.* at 1286-87. The court noted that under Alabama law, it was the duty of sheriffs "to ensure that inmates do not come to harm, to develop a policy of controlling inmate violence, and to staff the jail with appropriately trained jailors." *Id.* at 1288. The issue therefore was whether the sheriff functioned as a county policymaker when he took these actions so as to make the county liable for his actions. *Id.* The court held that Alabama sheriffs are not county policymakers in their daily management of county jails for purposes of 42 U.S.C. § 1983. *Id.* at 1290-91.

The court also noted that under Alabama law, the jailers were employees of the sheriff, not the county. *Id.*; *see also* Ala. Code § 14-6-105 (1975); *King v. Colbert County*, 620 So. 2d 623 (Ala. 1993); *Lockridge v. Etowah County Comm'n*, 460 So. 2d 1361 (Ala.Civ.App. 1984). A sheriff appoints, directs and controls the jailers who work at the jail. Ala. Code § 14-6-105 (1975); *Id.* at 1289. "Under the Alabama Code, the Sheriff has control over the inmates at the jail, the employees of the jail and the jail itself." *Id.* at 128.9 Counties have no authority to hire, fire or manage the sheriff's employees. *Id; Lockridge v. Etowah County Comm'n,* 460 So. 2d 1361, 1363 (Ala.Civ.App. 1984); *Terry v. Cook,* 866 F.2d 373, 379 (11th Cir. 1989). A sheriff's authority over his employees and the jail is totally independent of a county commission. *Turquitt*, 137 F.3d at 1289-90.

The court noted that although Alabama counties possessed some duties with respect to county jails, none of these duties pertained to the "daily operation of the jails or to the supervision of inmates."

The duties of the counties with respect to the jails "are limited to funding the operation of the jail and to providing facilities to house the jail." *Stark v .Madison County,* 678 So. 2d 787, 787 (Ala.Civ.App.1996). The county commission is charged with erecting and maintaining jails, and each county is required to maintain a jail of sufficient size and strength to secure the prisoners. *Ala.Code* §§ 11-14-10, 11-14-13 (1989). In construing these provisions, the Alabama courts have made it clear that the duty of the county to erect and maintain a county jail pertains exclusively to the physical plant of the jail. The duty to "maintain a jail" under § 11-14-10 is merely the duty to keep the "jail and all equipment therein in a state of repair and to preserve it from failure or decline." *Keeton v. Fayette County,* 558 So. 2d 884, 886 (Ala. 1989).

*Id.* at 1289-90.

As expressed in *Turquitt,* the Montgomery County Commission has no responsibility for the daily operation of Montgomery County jail. The Montgomery County Commission also does not manage the Sheriff's employees who work at the jail, including the officers who were charged with supervising the Plaintiff at the time of his alleged injury. The Sheriff is also not a policy maker for Montgomery County with respect to the operation of the jail. *Turquitt,* 137 F.3d at 1290-91; *see also, Marsh v. Butler County,* 268 F.3d 1014 (11th Cir. 2001)(county could only be liable for acts for which it was responsible, and county had no responsibility for the daily operation of county jail or the authority to run the jail). Plaintiff's claims against the Montgomery County Commission should therefore be dismissed.

Plaintiff also seeks punitive damages against Defendant Montgomery County Commission. In *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 259-60 (1981), the United States Supreme Court held that punitive damages in a § 1983 action against a municipality are not recoverable. This same reasoning also bars an award of punitive damages against a county. *See Covin v. McCougall,* 62 F.3d 1316, 1319 (11th Cir. 1995). Plaintiff's § 1983 claim against Defendant Montgomery County Commission, to the extent it seeks punitive damages, is therefore due to be dismissed.

### B. The Eleventh Amendment bars all official capacity claims against Sheriff Marshall, Director Savage, Officer Tolbert, Lieutenant Findley and Grievance Clerk Davis.

Plaintiff's claims against Sheriff Marshall, Director Savage, Officer Tolbert, Lieutenant Findley and Grievance Clerk Davis, in their official capacities, must be dismissed because they are entitled to immunity pursuant to the Eleventh Amendment to

the United States Constitution. The Eleventh Amendment prohibits suits in federal court against States and state officials in their official capacities. *Kimel v. State of Florida Bd. of Regents,* 139 F.3d 1426, 1429 (11th Cir. 1998); *Parker v. Williams,* 862 F.2d 1471 (11th Cir. 1989). Under Alabama law, sheriffs are state officers, and tort claims brought against sheriffs based on their official acts constitute suits against the State of Alabama. *Lancaster v. Monroe County,* 116 F.3d 1419, 1429 (11th Cir. 1997); *Parker v. Williams,* 862 F.2d 1471 (11th Cir. 1989), *rev'd on other grounds, Turquitt v. Jefferson County,* 137 F.3d 1285 (11th Cir. 1998). Under Alabama law, jailers carry out the sheriff's duty to maintain the legal custody and charge of the jail and all prisoners committed thereto. *Ala.Code* § 14-6-1 (1975). Therefore, Savage, Tolbert, Findley and Davis are also entitled immunity pursuant to the Eleventh Amendment with respect to the § 1983 claims asserted against them in their official capacities. *Lancaster v. Monroe County,* 116 F.3d at 1429-30. Accordingly, all claims against these Defendants in their official capacities are due to be dismissed.

    **C.**     **All § 1983 claims against Marshall, Savage, Tolbert, Findley and Davis in their official capacities must be dismissed because they are not "persons" under 42 U.S.C. § 1983.**

Plaintiff's claims against Defendants Marshall, Savage, Tolbet, Findley and Davis, in their official capacities under 42 U.S.C. §1983, should also be dismissed because in their official capacities, Defendants are not considered "persons" subject to liability under 42 U.S.C § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed. 2d 45 (1989); *Adams v. Franklin,* 111 F.Supp.2d 1255 (M.D.Ala. 2000).

    **D.**     **Qualified Immunity.**

For liability under § 1983, specific acts of personal involvement in the deprivation must be shown. *Respondeat superior* liability is not cognizable under § 1983. *Braddy v. Florida Dep't of Labor & Employment Sec.*, 133 F.3d 797, 801 (11th Cir. 1998); *Smith v. State of Alabama,* 996 F.Supp. 1203, 1212 (M.D.Ala. 1998). If the complaint does not allege that a defendant personally participated in the alleged constitutional deprivation, it should demonstrate an affirmative causal connection between the defendant's acts and the alleged constitutional deprivation in order to state a cause of action under § 1983. *Braddy,* 133 F.3d at 801-802; *Smith,* 996 F.Supp. at 1212.

The Eleventh Circuit has also imposed a "heightened pleading requirement" on plaintiffs when evaluating claims of qualified immunity. *GJR Investments, Inc. v. County of Escambia,* 132 F.3d 1359, 1367 (11th Cir. 1998). This requires that the plaintiff's complaint contain detailed allegations and specific facts concerning each defendant, which indicates what each defendant did to violate the plaintiff's rights. "Otherwise, the court must conclude that the named defendants, sued in their individual capacities, are entitled to qualified immunity from claims under both §§ 1981 and 1983." *Smith v. State of Alabama,* 996 F.Supp. 1203, 1212 (M.D.Ala. 1998).

Plaintiff's Complaint fails to set forth any facts of any personal involvement of Defendants Marshall, Savage, Findley and Davis in the alleged constitutional deprivation complained of by Plaintiff. There is also no allegation demonstrating a causal connection between the acts or omissions of these Defendants and the Plaintiff's injuries. It further appears that Sheriff Marshall, Detention Facility Director Savage, and Lieutenant Findley are sued solely because they had supervisory authority over the personnel at the detention

11

facility. Because there are no facts demonstrating any personal involvement by these Defendants, they are entitled to qualified immunity.

"Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzales v. Lee County Housing Authority,* 161 F.3rd 1290, 1295 (11th Cir. 1998). Defendants were acting within the scope of their discretionary authority, and the burden is therefore on the Plaintiff to demonstrate that Defendants' actions rise to a constitutional violation, and that Defendants violated clearly established law. *Hope v. Pelzer,* 536 U.S. 730 (2002). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202 (2001). The applicable law "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). In determining whether the unlawfulness of an official's actions was clearly established, "the salient question . . . is whether the state of the law [at the time of the unconstitutional act] gave [the official] fair warning that [his] alleged treatment of [the plaintiff] was unconstitutional." *Williams v. Consol. City of Jacksonville,* 341 F.3d 1261, 1270 (11th Cir. 2003) *quoting Hope,* 536 U.S. at 741. Plaintiff cannot meet this burden; therefore, his claims should be dismissed.

All of the Defendants are also entitled to qualified immunity because Plaintiff has failed to allege or demonstrate a constitutional violation. In evaluating the defense of

qualified immunity, the court must first determine whether the complaint states a claim for a constitutional violation. *Siegert v. Gilley*, 500 U.S. 226 (1991).

### Deliberate Indifference to Serious Medical Needs.

In *Farmer v Brennan,* 511 U.S. 825, 837 (1994), the Supreme Court held that the standard of deliberate indifference equated to that of "subjective recklessness" as that term is defined in criminal law. The official must know of an excessive risk to inmate health and disregard that risk. *Id.* at 837-383. In other words, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* An official's failure to respond to a significant risk that he should have perceived but did not is not deliberate indifference. *Id.* Summary judgment must be granted for the official unless the plaintiff presents evidence of the official's "subjective knowledge" of a substantial risk of serious harm. *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999). In addition, "[m]edical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991).

In the present case, there is no allegation that Defendants Marshall, Savage, Findley and Davis had any knowledge of the Plaintiff's alleged shoulder injury or that, with knowledge of this injury, these Defendants knowing or recklessly disregarded Plaintiff's alleged medical condition by failing to provide medical attention. Plaintiff's deliberate indifference claims against these Defendants must therefore be dismissed.

Plaintiff's deliberate indifference claim against Officer Tolbert must also be dismissed. Plaintiff claims that Officer Tolbert knew of the injury to Plaintiff's shoulder; however, the evidence is undisputed that Officer Tolbert was not deliberately indifferent by knowing or recklessly disregarding Plaintiff's alleged injury. Defendants have presented undisputed evidence that during the cell search, Plaintiff began cursing and using profanity. (Affidavit of Martinez Tolbert, ¶3) Handcuffs were placed on Plaintiff's hands and he was escorted by the arm by Officer Tolbert out of the cell into the hall. (Id.) Plaintiff complained about his shoulder hurting because he was handcuffed from behind. (Id.) Officer Tolbert then escorted Plaintiff to the medical unit where he was placed on the list to see the doctor. (Id.; MCDF Inmate Records, p. 16) Officer Tolbert therefore responded reasonably to Plaintiff's request for medical treatment. There is no evidence that Plaintiff requested medical assistance from Officer Tolbert at any time thereafter. Additionally, for several months after the cell search, Plaintiff continue to receive medial treatment consisting of physical examinations, pain medication, x-rays of his shoulder and physical therapy. Plaintiff's claim for deliberate indifference against Officer Tolbert must therefore must dismissed. And, because there is no constitutional violation of deliberate indifference to serious medial needs, any claim for supervisory liability against the supervisors Marshall, Savage and Findley must also fail. *Rooney v. Watson,* 101 F.3d 1378, 1381 n. 2 (11th Cir. 1996).

The Complaint also fails to allege facts to demonstrate a constitutional violation in light of clearly established law at the time of the incident in question. To overcome a defense of qualified immunity, a plaintiff has a heavy burden that must be discharged

before a governmental official sued in his individual capacity can be compelled to participate in § 1983 litigation.

> This circuit has established stringent standards for a plaintiff seeking to overcome the affirmative defense of qualified immunity asserted by a government official in an individual capacity. "Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[Citations omitted] "For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." [Citations omitted] "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." [Citations omitted]

*Gonzales v. Lee County Housing Authority,* 161 F.3d 1290, 1295 (11th Cir. 1998). A plaintiff cannot defeat a qualified immunity defense by simply citing to general rules or abstract rights. *Wilson v. Strong,* 156 F.3d 1131, 1134 (11th Cir. 1998). The United States Supreme Court has stated that case law at the time of the incident in question must give "fair warning" that the defendant's actions are unconstitutional. *Hope v. Pelzer,* 122 S.Ct. 2508, 2516 (2002).

The burden is on the Plaintiff to establish the Defendants had "fair warning" that their actions amounted to deliberate indifference to serious medical needs. The Plaintiff is unable to sustain this burden. None of the preexisting case law gave fair warning to the Defendants that their actions violated clearly established law. All Defendants are therefore entitled to qualified immunity with respect to Plaintiff's claim for deliberate indifference to serious medical needs.

**Excessive Force.**

Plaintiff also alleges that Officer Tolbert used "unnecessary force" when escorting him from the cell by slamming him against a wall. No allegations regarding excessive force are made against any of the other Defendants. For the reasons discussed below, Plaintiff's excessive force claim against Officer Tolbert must also be dismissed.

Because the Plaintiff was a pretrial detainee at the time of the alleged excessive force, his excessive force claim is to be analyzed under the Fourteenth Amendment. The Eleventh Circuit has adopted the analysis set forth in *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973), *cert denied*, 414 U.S. 1033 (1974); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500-01 (11th Cir. 1985) (*en banc*), *cert. denied*, 476 U.S. 1115 (1986). According to the court in *Johnson*, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* at 1033. The factors to be considered are (1) the need for the use of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of injury inflicted; and (4) the motive for using force, whether force was in good faith to restore order or maliciously and sadistically for the very purpose of causing harm. *Id.* at 1033. *See also, Carr v. Tatangelo*, 338 F.3d 1259, 1271 (11th Cir. 2003); *Jones v. City of Dothan, Alabama*, 121 F.3d 1456, 1461 (11th Cir. 1997). The Eleventh Circuit has made it clear that to give rise to an excessive force violation under the Fourteenth Amendment, it requires actions that are "necessarily more egregious than those which give rise to simple tort actions." *Carr,* 338 F.3d at 1271 n. 23, *citing Gilmere,* 774 F.2d at 1500.

Assuming Officer Tolbert slammed Plaintiff into the wall as claimed, this does not amount to actionable excessive force under the Fourteenth Amendment. It is

undisputed that Plaintiff was found with contraband during a cell search. Plaintiff was ordered to remove the contraband and in response to a direct order began cursing and using profanity. Plaintiff admits that he "had words" with Officer Tolbert during the cell search. There is no question that Plaintiff was belligerent and uncooperative during the cell search. The amount of force applied was insignificant and was in any event equal to the need for force based on Plaintiff's belligerent and uncooperative behavior. *See, Redd v. Conway,* Docket No. 05-12337 (11th Cir. Dec. 22, 2005)(no excessive force where officer pushed and pulled detainee causing him to twist ankle and injure foot where detainee was uncooperative upon arrest and kicked individual who reported him for shoplifting).

Additionally, this conduct simply does not rise to excessive force because this type of force is *de minimis*. In *Hicks v. Moore,* 422 F.3d 1246, 1254 (11th Cir. 2005), the court held that some acts by law enforcement officers are "just too insignificant and thus within the range of the constitutionally reasonable." The Eleventh Circuit has found similar conduct to that claimed by the Plaintiff in this case to be a *de minimis* use of force and thus not actionable. *See e.g., Nolin v. Isbell,* 207 F.3d 1253, 1255 (11th Cir. 2000), (officer grabbed plaintiff and shoved him a few feet against vehicle, pushed knee in back and head against van and handcuffed him); *Gold v. City of Miami,* 121 F.3d 1442, 1444 (11th Cir. 1997)(handcuffed too tightly and too long); *Jones v. City of Dothan, Alabama,* 121 F.3d 1456, 1458 (11th Cir. 1997)(slammed plaintiff against the wall, kicked his legs apart and required plaintiff to raise hands above head as officers carried out arrest); *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1556 (11th Cir. 1993)(pushed plaintiff against wall while being handcuffed), *modified,* 14 F.3d 583 (11th Cir. 1994); *Vinyard v. Wilson,*

311 F.3d 1340, 1343-44, 1349 n. 13 (11th Cir. 2002)(*de minimis* force where officer grabbed plaintiff's arm and jerked her out of chair, and later at station, dragged her into the jail by either her shirt, arm or her hair).

Here, assuming Plaintiff was slammed into the wall while being escorted, this does not amount to excessive force. Prior to the incident with Officer Tolbert, Plaintiff had already been complaining of pain to his shoulder. (MCDF Inmate Records, pp. 3-10; Affidavit of Gina Savage, ¶ 3) After the incident with Officer Tolbert, Plaintiff had no fractures, swelling, edema, lacerations, and no other evidence of injury to his shoulder. X-rays showed that his shoulder was normal. The actions complained of by Plaintiff constitute a *de minimis* use of force that are not actionable as excessive force under the Fourteenth Amendment. Plaintiff's excessive force claim should therefore be dismissed.

Officer Tolbert should also be afforded qualified immunity with respect to this claim. If Officer Tolbert had examined the precedents, he would not have found preexisting case law involving materially similar facts that would have given him fair and clear warning that his actions were unconstitutional. *Kesinger v. Herrington,* 381 F.3d 1243 (11th Cir. 20004)(qualified immunity appropriate in excessive force case where there was no preexisting case law involving materially similar facts that would have given a reasonable officer fair and clear warning that his actions were unconstitutional); *Garrett v. Athens-Clarke County,* 378 F.3d 1274 (11th Cir. 2004)(court held that no controlling case law had settled the applicable law; and "given the circumstances, defendants' acts were not so far beyond the hazy border between excessive and acceptable force that every objectively reasonable officer, facing the circumstances, would have known that the acts violated the pre-existing federal law."

Without any material similar precedents to give Officer Tolbert fair warning, he should not be stripped of qualified immunity in this case.

Respectfully submitted this 15[h] day of February, 2006.

/s/ Thomas T. Gallion, III
Thomas T. Gallion, III  (GAL010)
Constance C. Walker (WAL 144)
Attorneys for Defendants Montgomery County Commission, D.T. Marshall, Gina M. Savage, Annie Pearl Findely, Martinez Tolbert and Fae Davis

**OF COUNSEL:**

**HASKELL SLAUGHTER YOUNG & GALLION, L.L.C.**
Post Office Box 4660
Montgomery, Alabama 36103-4660
(334) 265-8573
(334) 264-7945 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon the following listed persons by hand delivery or by placing a copy of the same in the United States mail, postage prepaid and properly addressed, on this the 15th day of February, 2006.

Aloysius Thaddeus Henry
Montgomery County Detention Facility
4-D-3
Post Office Box 4599
Montgomery, Alabama  36103

Daniel F. Beasley, Esq.
Lanier Ford Shaver Payne P.C.
200 West Side Square
Suite 5000
Huntsville, Alabama  35801

_____
Of Counsel